# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL GARAMELLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-1891 NAB |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Michael Garamella's application for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416, 423 *et seq.* Garamella alleged disability due to arthritis pain, depression, degenerative disc disease, anxiety, panic attacks, sleep apnea, antisocial behavior, and bulging discs. (Tr. 186.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.]

Garamella asserts that the administrative law judge (ALJ) erred in his evaluation of Garamella's credibility and in assigning little weight to the opinions of Garamella's treating providers. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed. The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. For the reasons set forth below, the Court will reverse and remand the Commissioner's final decision.

**I.      Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)A), 423(d)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 726 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**II.     Discussion**

The ALJ found that Garamella had the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the knees, asthma, obstructive sleep apnea, type II diabetes

mellitus, obesity, schizophrenia, depression, anxiety, and agoraphobia with panic. (Tr. 13.) The ALJ determined that Garamella had the residual functional capacity to perform light work with the following limitations: (1) never climb ladders, ropes, and scaffolds; (2) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (3) never work at unprotected heights, with moving mechanical parts, be exposed to humidity/wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and extreme heat. (Tr. 16-17.) The ALJ found Garamella can perform simple, routine, repetitive tasks in a work environment free of fast paced production requirements involving only simple, work-related decisions with only occasional work place changes. (Tr. 17.) He can only have occasional contact with supervisors and coworkers, but should never have contact with the general public. (Tr. 17.)

### A. Opinions of Treating Providers

Garamella asserts that the ALJ erred because he gave little weight to his treating providers' opinions. Garamella's primary treating providers were board certified nurse practitioner Brook Strickland and licensed clinical social worker Nancy Phillips Kuelker.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources. Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical

social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 416.913(d)[1]. "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. The parties do not dispute the existence or type of Garamella's medically determinable impairments.

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. § 416.913(d). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider Garamella's providers' opinions in evaluating his impairments.

### 1. Nancy Phillips Kuelker, M.S.W.

Nancy Phillips Kuelker, a licensed clinical social worker, treated Garamella between August 2014 and June 2015. During his treatment, Kuelker diagnosed Garamella with agoraphobia with panic disorder, anxiety, major depressive disorder, recurrent. During the time of his treatment with Kuelker, Garamella reported panic attacks, difficulty sleeping, anxiety, auditory and visual hallucinations, racing thoughts, and disorientation. (Tr. 326, 530, 549, 557, 562, 583, 627, 640, 647.)

---

[1] The Court notes that the social security regulations have changed effective March 27, 2017. Because this claim was filed in April 2013, the Court will use the prior versions of the regulations effective at the time that Garamella's application for benefits was filed. *See* 20 C.F.R. §§ 416.913, 416.927 (version effective March 27, 2017).

At the beginning of Kuelker's treatment sessions with Garamella in September and October 2014, her notes of his global assessment functioning (GAF)[2] indicate that he was demonstrating serious symptoms or a serious impairment in social, occupational, and school functioning. (Tr. 531, 546, 549, 560.) He later improved slightly and begin demonstrating moderate symptoms or moderate difficulty in social, occupational, or school functioning. (Tr. 563, 565, 569, 586, 626, 635, 642, 648, 662, 678, 696.)

Kuelker's treatment notes indicated that Garamella made mostly minimal progress toward his treatment goals and there were no substantial changes in his mental status examination results. (Tr. 545, 548, 559, 568, 583, 626, 661.) There was only one instance in February 2015, when she noted he made good progress (633) and two instances of some progress (562, 695) in October 2014 and June 2015.

On July 29, 2015, Nancy Kuelker completed a Mental Residual Functional Capacity Questionnaire regarding Garamella. (Tr. 739-743.) Kuelker noted that she had treated Garamella for one year, at times weekly, sometimes monthly. (Tr. 739.) She diagnosed him with major depressive disorder, recurrent and anxiety. (Tr. 739.) She noted that he had a poor response to medication and cognitive behavioral therapy. (Tr. 739.) Kuelker wrote "no mental status exam was done" and Garamella's "global assessment functioning is very low at 54." (Tr. 739.) She described his prognosis as "poor." (Tr. 739.)

---

[2] The GAF scale is "a numeric scale used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental-health illness." *Mabry v. Colvin*, 815 F.3d 386, 391 n. 6 (8th Cir. 2016) (citing *Pates-Fire v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2001)). "The scale ranges from zero to one hundred." *Id.* A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). "The most recent edition of the Diagnostic and Statistical Manual of Mental Disorders discontinued use of the GAF scale." *Id.* Even before the DSM-V discontinued use of the GAF scores, the Commissioner declined to fully endorse GAF scores for use in social security and SSI disability programs. *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). "GAF scores may be relevant to a determination of disability based on mental impairments. But an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Mabry*, 815 F.3d at 391. GAF scores have no direct correlation to the severity standard used by the Commissioner. *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65).

Kuelker identified Garamella's symptoms as anhedonia or pervasive loss of interest in almost all activities; decreased energy; feelings of guilt and worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating, pathological dependence, passivity or agressivity; apprehensive expectation; hallucinations or delusions; memory impairment; sleep disturbance; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. (Tr. 740.) Kuelker then addressed Garamella's mental abilities and aptitude to do unskilled work. She opined that he had no useful ability to function and perform at a consistent pace without an unreasonable number and length of rest breaks. (Tr. 741.) She opined that he was unable to meet competitive standards to (1) remember work like procedures, (2) maintain attention for a two hour segment, (3) maintain regular attendance and be punctual within customary, usually strict tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being unduly distracted; (6) make simple work related decisions; and (7) complete a normal workday and workweek without interruptions from psychologically based symptoms; (8) get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; and (9) deal with normal work stress. (Tr. 741.) She also opined that he was seriously limited, but not prohibited from understanding, remembering, and carrying out very short and simple instructions; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and being aware of normal hazards and take appropriate precautions. (Tr. 741.)

Kuelker opined that he had no useful ability to perform semiskilled or skilled work. (Tr. 742.) She noted that he depends on his wife for all decision making and only goes where his

6

wife drives him. She stated that he has panic attacks in public and his personal hygiene is poor. (Tr. 742.) She noted that Garamella and his wife reported that he sat all day and rarely performed household tasks, due to lethargy and lack of motivation. (Tr. 741.) Garamella also reported that he has anxiety attacks when leaving home and his wife reported that he forgot basic cooking techniques. (Tr. 741.)

Kuelker stated that Garamella has no useful ability to interact appropriately with the general public, travel in unfamiliar places, or use public transportation. (Tr. 742.) She also wrote that Garamella was unable to meet competitive standards to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 742.) Kuelker reports that Garamella does not have a low IQ or reduced intellectual functioning. (Tr. 742.) She wrote, "He has pain disorders. Mood and pain are closely related. Pain hinders ADL's as well as mood." (Tr. 743.) She opined that his impairments and treatment would cause him to miss work more than four days per month. (Tr. 743.) She also opined that his impairment can be expected to last at least twelve months and he was not a malingerer. (Tr. 743.) For additional reasons, why Garamella would have difficulty working at a regular job on a sustained basis, Kuelker wrote, "He would shake, sweat, then leave the building due to panic. He could not complete tasks." (Tr. 743.) Finally she stated that he would be unable to manage his benefits and the earliest date that the limitations applied was 2008. (Tr. 743.)

The ALJ found that Garamella's restrictions were not as severe as Kuelker indicated. (Tr. 22.) The ALJ found that during treatment Garamella reported an increased ability to go out in public, travel with his son to visit family members, host family members at his home, and attend parties. The ALJ wrote that Garamella made statements that his medicine controlled his symptoms, reduced panic attacks, and decreased incidents of hallucinations. The ALJ also noted

7

that Kuelker was not an acceptable medical source. Therefore the ALJ gave her opinion little weight. Based on a careful review of the evidence in the record as a whole, the Court finds that the ALJ's evaluation of Kuelker's opinion is not supported by substantial evidence.

Garamella's treatment records demonstrate that he has a chronic mental disability. *See* 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F) (in cases involving chronic mental disorder, overt symptomatology may be controlled or attenuated by psychosocial factors such as highly structured and supportive settings that may greatly reduce the mental demands on the claimant. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized, but the ability to function outside of a structured or supportive setting may not have changed). Just as a person with physical impairments need not be bedridden or completely helpless to be found disabled, a person with mental impairments does not have to be hospitalized or suicidal every day to be found disabled. *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (well settled law that a claimant need not be bedridden or helpless to be found disabled). The Eighth Circuit has repeatedly held that "a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998).

In this case, the ALJ and the Commissioner overstated the level of activity and improvement indicated in the record. For example, the ALJ and the Commissioner cite to isolated instances where Garamella reported improvement from medication or decreased anxiety. In each of the instances cited by the ALJ and the Commissioner, Garamella, while noting improvement, continued to display symptoms that may preclude him from working. During a visit to his primary care provider in November 2013, Garamella noted that his auditory

hallucinations had decreased from three voices to two, he hosted his wife's family at his home, and that he had to isolate himself afterwards. (Tr. 326.) He was also able to play mini golf, which he had been unable to do previously. (Tr. 326.) He attributed this to a medication adjustment on his previous visit. (Tr. 322, 326.) On September 23, 2014, he reported that he enjoyed lunch alone with his daughter at a restaurant, but at the end of the busy afternoon, he was extremely anxious. (Tr. 549.) He was not sure it was a good idea. (Tr. 549.) A few days later on September 30, 2014, Garamella received medication adjustments from his primary care provider due to worsening depression, "anxiety through the roof," daily panic attacks, violent dreams, and hearing voices. (Tr. 557.) On October 7, 2014, he reported to Kuelker that the voices had quieted some. (Tr. 559.) A week later, he reported to Kuelker "an improvement in mood and motivation since recent med changed." (Tr. 562.) He also reported that he cooked two meals with his wife, walked the dog a few times, and completed several household chores over the course of a week. (Tr. 562.) He also noted that he was "still panicky and feels anxious in public" and he "refuses to go to outings with the family." (Tr. 562.)

In November 2014, Garamella reported to his primary care provider that his panic attacks had "really subsided" and were rarely occurring and his anxiety had decreased. (Tr. 574.) He felt that his medication was working well. (Tr. 574.) He noted that he handed out Halloween candy, but could not handle going to a party with family afterwards. (Tr. 574.) Two weeks later, he reported to Kuelker that he was content with his contribution to the household chores and frustrated with his level of anxiety outside of the house. (Tr. 583.)

On February 6, 2015, Garamella told Kuelker that he had a successful week caring for his father-in-law post-surgery, but that after he returned home he began having visual hallucinations and that his anxiety had increased. (Tr. 627.) Later that month, he noted that his visual and

9

auditory hallucinations had quieted down significantly, he attended a family birthday party and enjoyed himself and chatted briefly with others in the waiting area. (Tr. 633.) In early March 2015, he requested an earlier session due to stress of his family dog dying. (Tr. 640.) His wife reported that he had become disoriented. (Tr. 640.) At the following session, he noted that his disorientation was mild and not as severe. (Tr. 647.) The treatment notes from all of Garamella's health care providers indicate a typical waxing and waning of mental health symptoms with medication adjustments as needed.

"It is possible for a person's health to improve, and for the person to remain too disabled to work." *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003). "[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to [his] work-related functional capacity." *Hutshell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). *See e.g., Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (claimant doing well for someone with systemic lupus erythematosus and it does not contradict doctor's opinion on her inability to work); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991) (A person who has undergone a kidney transplant may indeed "feel better" than she did when she was undergoing dialysis, but that does not compel the conclusion that she was therefore able to work). To determine whether a claimant has the residual functional capacity necessary to be able to work the Court looks to whether he has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)). None of the instances cited by the ALJ and the Commissioner's brief indicate Garamella's ability to work at a job day in and day out.

Finally, although Kuelker is not an acceptable medical source, her treatment notes reflect the severity of Garamella's impairments and should be considered. Kuelker's treatment notes were substantially consistent with the other evidence in the record. Kuelker's mental residual functional capacity questionnaire was also consistent with her treatment notes. Therefore, the ALJ's reasons for giving little weight to Kuelker's opinion were not supported by substantial evidence in the record as a whole.

2. **Brook Strickland[3]**

Brook Strickland, board certified nurse practitioner, treated Garamella between July 2014 and June 2015. She treated him and prescribed medication for back pain, depression, asthma, hypertension, diabetes, sleep apnea, tachycardia, morbid obesity, agoraphobia with panic disorder, and anxiety. On August 28, 2015, Brook Strickland completed a physical residual functional capacity questionnaire regarding Garamella. (Tr. 744-48.) Strickland began treating Garamella in July 2014 approximately every one to two months. (Tr. 744.) She diagnosed him with depression, agoraphobia, panic disorder, and lumbago. (Tr. 744.) Strickland noted that Garamella's symptoms included low moods, general anxiety, very high anxiety in situations outside of his house, nightmares nightly, very forgetful, low back pain radiating down both legs, consistent with low back pain, and low back pain that wraps around waist and limits mobility. (Tr. 744.) Garamella describes his low back pain as aching/sharp, radiates down bilateral legs often. (Tr. 744.) Strickland also referenced an MRI. (Tr. 744.)

Strickland noted that Garamella's impairments could be expected to last at least 12 months. She also noted that emotional factors contributed to the severity of his symptoms and

---

[3] The Court notes that Ms. Strickland's notes are difficult to read, therefore a few indecipherable words were omitted in the medical summary.

functional limitations. She indicated that depression and anxiety affected his physical condition. Strickland indicated that Garamella was incapable of tolerating "even low stress jobs."

The ALJ gave Strickland's opinion little weight because he stated that Garamella received no more than routine treatment for his muskoskeletal impairments, he was no longer oxygen dependent, and he did not complain of work restrictions imposed by sleep apnea. (Tr. 23.) The ALJ also found that Garamella was able to prepare meals for a dinner party and travel without disruptions from his physical symptoms. (Tr. 23.) The ALJ also noted that Strickland was not an acceptable medical source. (Tr. 723.)

Garamella does not specifically refute the ALJ's findings on Garamella's physical restrictions, therefore, the Court will not address those. To the extent the ALJ discounted Strickland's treatment notes and opinion regarding Garamella's mental impairments, the ALJ should re-evaluate those in light of the Court's discussion of Kuelker's opinion, because Strickland and Kuelker's treatment notes were consistent and covered the same time period.

### B. Credibility

Finally, Garamella contends that the ALJ improperly discounted his credibility. Because the ALJ discounted Garamella's credibility for substantially the same reasons that he discounted Kuelker's RFC assessment, the ALJ should reevaluate Garamella's credibility assessment in light of the considerations indicated above.

## III. Conclusion

Based on the foregoing, the undersigned finds that the Commissioner's final decision was not supported by substantial evidence in the record. Therefore, the Court will reverse and remand this action for further proceedings consistent with this memorandum and order.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision of September 21, 2015 is **REVERSED** and **REMANDED** to re-evaluate the weight given to Brook Strickland and Nancy Kuelker's opinion, re-evaluate Garamella's credibility, and provide a new RFC determination.

**IT IS FURTHER ORDERED** that a Judgment will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 16th day of July, 2018.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE